ROUSSEAU v. PECK et al.

(Circuit Court, E. D. New York. March 15, 1895.)

1. PATENTS—VALIDITY—CLAIMS FOR RESULTS—ELECTRIC CIRCUIT BREAKERS.
    Claims for an automatic electric circuit breaker, so operated by time mechanism as to permanently break the circuit at a predetermined time, and for an electro-magnet arranged to release a clockwork motor whenever the circuit remains closed for longer than a normal period, appear to be claims for results, or for all means for producing them, rather than for invented means for producing them.

**2. SAME—INFRINGEMENT.**

The Rousseau patent, No. 279,107, for an automatic opener of electric circuits, construed as to claims 1 and 2, and *held* not infringed, and apparently invalid.

This was a bill by David Rousseau against John B. Peck and others for infringement of a patent.

Richard N. Dyer, for plaintiff.

Edwin H. Brown and Edward P. Payson, for defendants.

WHEELER, District Judge. The questions in this case arise upon patent 279,107, dated June 5, 1883, and granted to the plaintiff for an automatic opener of electric circuits to prevent too long closing of the circuit, and exhaustion of the battery. The specification describes an electro-magnet in the circuit, with an armature near it, to be attracted and moved whenever the circuit is closed, and by this motion to start clockwork which, when continued, by intricate mechanism in two or three forms, raises detents that release other clockwork or start other devices, which permanently break the circuit. These claims are for:

(1) The combination, with an electric generator and an electric circuit emanating therefrom, of an electro-motive device which is vitalized by the closing of said circuit, automatic time mechanism which is started into operation by said electro-motive device when so vitalized, and an automatic circuit breaker which is operated by said time mechanism to permanently break said circuit at the expiration of a predetermined time after the closing of the same, substantially as set forth.

(2) An electric circuit of the kind described, provided with an electro-magnet arranged therein, in combination with a clockwork motor, arranged, when released, to work a contact breaker to permanently break the circuit, and having the said magnet arranged to thus release the said clockwork whenever said magnet remains active and the circuit remains closed longer than a normal period, substantially as herein set forth.

Such circuit breakers starting by clockwork were well known and in use before the plaintiff's invention, and among those put in evidence is one called the "Gibson Cut-Off," of unquestioned priority. This device is compared with that of the patent by the plaintiff testifying thus:

"When the armature is drawn down, it releases the clock movement, and proceeds towards cutting off, while the Rousseau apparatus releases a clock movement, and proceeds towards cutting off, but the parts come back to their normal condition if the circuit is not closed long enough to cut off."

And by one of his witnesses thus:

"After each normal closure of the circuit to light the gas, the Gibson apparatus runs down a little, and does not recover the ground lost; while in the case of the Rousseau apparatus the normal closure of the circuit in lighting the gas allows the spring to run down a little, but the circuit-breaking appliances have not moved towards or approached a condition wherein the circuit is broken; but, on the other hand, they at once, on the opening of the circuit after the normal closure, recover their positions and reinstate themselves in their original condition."

These claims are not for the specific mechanical devices which constitute these parts,—the other claims are for those,—but are for the combination of parts composed of devices which will do these things. One element of the combination of the first claim is

a circuit breaker operated by time mechanism to permanently break the circuit "at the expiration of a predetermined time after the closing." One of the second is a magnet arranged to release clockwork whenever the "magnet remains active and the circuit remains closed longer than a normal period." In neither is any arrangement of devices, or anything composed of devices, for the recovery of the parts to place, included. The same witness testifies with reference to the alleged infringement:

"With the defendants' apparatus, the normal closure of the circuit for the purpose of lighting the gas, though it starts the clockwork, allows the same to come to rest, and the circuit-breaking appliances to return to their normal position, after each lighting operation, or after each normal closure, so that a predetermined period of time can be settled upon by the constructor for the permanent breaking of the circuit should an accident occur; and this is the vital feature that gives the distinguishing characteristic to the Rousseau device, and which feature is clearly found in the apparatus of the defendants."

So this improvement, the alleged taking of which is the only infringement to be considered, does not appear to be covered by these claims.

Again, these claims do not appear to cover the specific mechanism. Wing v. Anthony, 106 U. S. 142, 1 Sup. Ct. 93. If they did, the defendants do not use it. The only new thing which they can cover is the circuit breaker of the first, so operated by time mechanism as to permanently break the circuit on predetermined time; or the magnet of the second, arranged to release a clockwork motor whenever the circuit remains closed longer than a normal period, in their respective combinations. These appear to be results, or all means of producing them, rather than invented means of producing them. The plaintiff would not seem to be any more entitled to a patent in a combination on mechanism that will break a circuit, or a magnet that will release clockwork on predetermined time, merely, than the patentee was on connecting the reed with the yarn beam, in Stone v. Sprague, 1 Story, 270, Fed. Cas. No. 13,487; or than the Hansons were on forming pipes of metal under heat and pressure, in Le Roy v. Tatham, 14 How. 175; or than Morse was on the electric current for marking or printing at a distance, in O'Reilly v. Morse, 15 How. 62.

Bill dismissed.